IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHARLES R. TAYLOR, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-068-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Charles R. Taylor (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 2, 1962 and was 44 years old at the time of the latest decision by the ALJ. Claimant completed his education through the eleventh grade. Claimant has worked in the past as a welder, railroad switch tender, and construction worker. He has also worked in the livestock markets. Claimant alleges an inability to work beginning July 14, 2000 due to headaches, chest pain, loss of leg circulation, Lyme's disease, stroke symptoms, lumbar degenerative disease, and right knee degenerative joint disease.

### Procedural History

On July 21, 2000, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 25, 2001, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council subsequently denied review.

On May 30, 2001, Claimant filed his second application for benefits. On June 10, 2002, Claimant's application was denied by the ALJ after an administrative hearing. The Appeals Council also denied review of this decision.

On September 27, 2002, Claimant filed his current applications, asserting an onset date of July 14, 2000. These applications were denied initially and upon reconsideration. On January 12, 2004, a hearing was held before ALJ Michael A. Kirkpatrick in Hugo, Oklahoma. By decision dated July 9, 2004, the ALJ found that Claimant was not disabled. On October 20, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for further administrative proceedings. Prior to the entry of that Order, however, Claimant filed additional applications for benefits on August 3, 2004. In its decision, the Appeals Council ordered that these latter claims be consolidated with the earlier application on remand.

On June 20, 2006, a supplemental hearing was held before ALJ

4

Lantz McClain in Hugo, Oklahoma. On July 27, 2006, the ALJ issued an unfavorable decision. On January 24, 2007, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly weigh the opinion of Claimant's treating physician; and (2) arriving at an RFC which enabled Claimant to perform a full range of sedentary work.

## Treating Physician's Opinion

Claimant asserts the ALJ failed to afford the proper weight to the opinion of Dr. G.V.N. Murty, a treating physician. Claimant's back problems first manifested when he sought treatment for low back pain from Dr. Paul Gibson on July 21, 2000. Claimant complained of having cramps at work, sweating, and numbness in his extremities. Claimant's back was tender and his muscles were tight. Dr. Gibson diagnosed Claimant with thoracodorsal strain and

5

gave him medication. (Tr. 721). On July 26, 2000, Claimant presented to the emergency room, where an x-ray of his lumbar spinal area revealed mild spondylolisthesis or forward displacement of L5 on S1 and probable bilateral spondyloysis in association withsome facet arthropathy. (Tr. 124). On July 27, 2000, Claimant was diagnosed by Dr. Kartik Konduri with lower back strain secondary to work activity, right inguinal lymphadenopathy secondary to a localized infection of folliculitis of his right thigh, and evidence of numbness and tingling without specific pathology, with the possibility of sensory neuropathy. (Tr. 183).

On August 17, 2000, Claimant was evaluated by Dr. Peter J. Edenhoffer, complaining of bilateral leg numbness. Claimant underwent an MRI of the cervical area on August 25, 2000 which returned negative. Claimant experienced severe give-way weakness with complaints of pain in his right shoulder. Dr. Edenhoffer noted a 50% decrement to sensation to all modalities in a stocking distribution in comparison of the knees to the toes. (Tr. 145). Dr. Edenhoffer concluded Claimant might be suffering from a peripheral process, possibly myelopathy. (tr. 146).

On September 19, 2000, Claimant was evaluated by Dr. Mark Nardone, who concluded Claimant's chest pain and shoulder weakness was attributed to nonspecific anterior chest pain bilaterally. (Tr. 135). In a follow-up appointment with Dr. Edenhoffer, Claimant experienced give-way weakness in his right shoulder with

decreased sensation to all modalities in his shoulder. (Tr. 140-141). Laboratory tests concluded Claimant tested positive for Lyme disease. (Tr. 147-148).

Claimant was evaluated beginning in August of 2001 and continuing through November of 2003 for low back pain and shoulder pain, headaches, neck pain and nausea. All of his symptoms were treated with medications without a specific conclusive diagnosis.

On January 19, 2004, Claimant sought treatment from Dr. G.V.N. Murty for low back pain. Dr. Murty diagnosed Claimant with degenerative disk disease, degenerative arthritis, lumbosacral spine. Claimant's condition was treated with medication. (Tr. 704).

On February 9, 2004, Claimant was again attended by Dr. Murty, complaining of itching and rash as well as low back pain. Dr. Murty prescribed medication for the condition. (Tr. 703).

On March 25, 2004, Claimant saw Dr. Murty for treatment of low back pain. The rash continued as well as spells of anxiety. Dr. Murty noted tenderness present in the lower back. He diagnosed Claimant with dematitis, degenerative disk disease, lumbosacral spine, and chronic anxiety neurosis. (Tr. 702).

On April 26, 2004, Claimant went to Dr. Murty with complaints of low back pain and arthralgias in the knee joints. Dr. Murty diagnosed Claimant with chronic pain in the lower back, chronic anxiety neurosis, and chronic dermatitis and prescribed medications

for the conditions accordingly. (Tr. 701).

On May 25, 2004, Claimant saw Dr. Murty post-MRI. Dr. Murty noted the MRI revealed a 2 mm. paracentral disk bulge associated with mild narrowing of the spinal canal. Claimant continued to complain of lower back pain and arthralgias in the right knee joint. Dr. Murty diagnosed Claimant with degenerative arthritis, knee joint, chronic pain in his lower back, and degenerative disk disease, lumbosacral spine. He referred Claimant to a neurosurgeon for evaluation. (Tr. 700).

On July 1, 2004, Claimant was seen by Dr. Christopher Wolfla. Dr. Wolfla, a neurologist. Dr. Wolfla noted Claimant's right eye and face had a droop, punched out lesions of unknown origin on his arms and legs, and joint pain, particularly in the right knee. Straight leg raise test was mildly positive bilaterally and internal rotation of the hips was mildly painful bilaterally. Claimant experienced decreased sensation in the S1 distributions bilaterally and in the L5 distribution on the right. Dr. Wolfla reviewed Claimant's MRI, noting it revealed an abnormality of the L5 lamina suggestive of a spondylolysis. A small disk bulge was noted at L4-L5 with some disk dehydration. Dr. Wolfla found the pain Claimant was having in multiple joints was indicative of polyarticular arthritis. He recommended that Claimant be evaluated by a rheumatologist. Dr. Wolfla diagnosed Claimant with polyarticular arthralgias, polyradicular lower extremity sensory

loss, the bulge found by the MRI, and probable Lyme disease. (Tr. 584-586).

On August 2, 2004, Claimant was again attended by Dr. Murty, reporting pain in his lower back and skin lesions. Dr. Murty determined Claimant had obsessive compulsive disorder ("OCD"), scratching himself. Dr. Murty prescribed Prozac, Lortab, Atacand, and Diazepam. He was also prescribed a back brace. (Tr. 697).

In a follow-up visit to Dr. Murty on September 2, 2004, Claimant maintained his complaints of lower back pain. Dr. Murty diagnosed Claimant with degenerative disk disease, lumbosacral spine and hypertension. He noted Claimant was responding to treatment for his lesions and OCD. (Tr. 696).

On November 1, 2004, Claimant saw Dr. Murty, complaining of lower back pain, continued skin lesions from scratching, nervousness and anxiety attributed to his son being dysfunctional in school. He diagnosed Claimant with hypertension, degenerative arthritis, OCD, and chronic anxiety neurosis. He increased Claimant's dosage of Prozac and provided Valium and Lortab. (Tr. 695).

On November 29, 2004, Claimant underwent an neurological evaluation by Dr. Robert F. Goldstein. Dr. Goldstein found Claimant had numbness and tingling of the arms and legs along with chronic back pain, which may be secondary to underlying disc disease and mild spondylolisthesis. He also found generalized

polyarthralgia. He suggested further evaluation of peripheral neuropathy, including additional testing with a full EMG/NCV study of the bilateral upper and lower extremities. Dr. Goldstein opined Claimant may have a myofascial and fibromyalgia component to his complaints as well as a possible somatization and/or conversion reaction overlay as well. (Tr. 688-689).

On November 30, 2004, Claimant again saw Dr. Murty. Claimant complained of lower back pain and spells of anxiety and nervousness. He diagnosed Claimant with OCD, degenerative disk disease, degenerative arthritis, and peripheral neuropathy. (Tr. 694). Dr. Murty continued with the same diagnosis and treatment in December of 2004 and January and February of 2005. (Tr. 691-693).

On August 29, 2005, Claimant was evaluated by neurosurgeon Dr. Benjamin T. White on Dr. Murty's referral. Claimant presented to Dr. White with low back pain, neck pain, bilateral hip pain, and numbness in his arms and legs. Dr. White recognized Claimant was "in a severe amount of distress in the office today, from low back pain." He noted significant cutaneous sensitivity in Claimant's low back. Claimant exhibited limitations of range of motion in all directions "with a lot of pain." Straight leg testing was negative. Claimant had pain with a figure four test bilaterally, in his hips and groin region. A lower extremity neurologic examination revealed intact strength when Claimant is standing but break away weakness in all muscle groups with confrontation.

10

Dr. White acknowledged the MRI done in April of 2004 and its showing of retrolisthesis at L4-L5 and degenerative disk disease at L4-L5 and L5-S1. Claimant had patent foramina and his central canal is widely patent. Dr. White noted a pars defect at L5 after reviewing a CT scan from February of 2003. Claimant's cervical spine was found to be normal. Dr. White concluded that Claimant was not a surgical candidate. (Tr. 601).

On October 4, 2005, Claimant again saw Dr. Murty, complaining of severe pain in his lower back from degenerative disk disease. Dr. Murty acknowledged an MRI scan performed July 28, 2005 which revealed a "pseudo-annular" disk bulging at L4-L5 and bilateral spondylolysis and annular disk bulging at L5-S1 with foraminal extension. He also states Claimant is not a candidate for any kind of surgery. Dr. Murty found Claimant could not sit for more than 25-30 minutes and experiences pain when he has to stand up. He also found Claimant could only walk for up to 25 yards before he experiences severe pain. He states Claimant cannot bend down or stoop down. Dr. Murty concludes Claimant is not capable of holding any meaningful employment and that he requires a cane to ambulate. (Tr. 603).

On February 22, 2006, Claimant was evaluated by Dr. Michael Karathanos, a consultative examiner. Claimant reported he suffered chronic pain from degenerative disc disease of the spine in the lumbosacral region and, to a lesser degree, the cervical spine.

Dr. Karathanos acknowledged the results of an MRIs from April of 2004 and July of 2005 which revealed a moderate broad-based disc bulge at L4-L5 with a slight absorption and a mild annular disc bulging at L5-S1. He noted Claimant wore a back braced. Dr. Karathanos stated Claimant appeared older than his age. He found Claimant had difficulty walking on tandem walk or on heels and toes due to pain. He also noted a markedly decreased range of motion in the lumbosacral spine area. Dr. Karathanos diagnosed Claimant with chronic pain disorder due to degenerative lumbosacral spine disease. (Tr. 747-748).

On September 13, 2006, Claimant was interviewed by Cindy Baugh, a counselor. Claimant informed Ms. Baugh that he suffered from periods of severe depression since he stopped working, fatigue, and loss of appetite. He reported seeing things in his peripheral vision that were not there. He was preoccupied with receiving Social Security Income. Claimant reported crying episodes twice per day. Ms. Baugh diagnosed Claimant with major depression, recurrent, severe and psychotic features. (Tr. 789-790).

On September 26, 2006, Claimant was evaluated by Dr. Jeri Fritz, a licensed clinical psychologist. Dr. Fritz concluded Claimant suffered from major depression, recurrent, moderate and pain syndrome due to the pain caused by Claimant's degenerative disc disease. (Tr. 794). Dr. Fritz considered Claimant's

prognosis was poor after being out of the work force for an extended period, Claimant's focus upon his condition, and Claimant's personality characteristics. Id.

In his decision, the ALJ found Claimant suffers from the severe impairments of lumbar degenerative disk disease and right knee degenerative joint disease. However, he also determined Claimant is capable of performing a full range of sedentary work. (Tr. 34-35).

With regard to the opinions of Dr. Murty and Dr. Rowland, the ALJ acknowledged the statements of disability of each physician and states he gave them "due consideration." He also concedes that "[t]hese assessments, if accepted at face value, would compel a conclusion that claimant is disabled." (Tr. 29). However, he concludes neither opinion is "well supported by medically acceptable clinical and diagnostic techniques and because they are inconsistent with other substantial medical evidence of record, they are not entitled to controlling weight herein." Id.

It is apparent the ALJ gave no weight to Dr. Murty's opinions. The basis the ALJ gives for this diminution in value of Dr. Murty's opinions is (1) while Dr. Murty was Claimant's primary care physician, he has no particular medical expertise in orthopedics or neurology; (2) Dr. Murty only references one MRI in his opinion "but otherwise did not refer to any clinical or diagnostic findings which supported his functional assessments . . . . There is

nothing in the medical records which otherwise suggests that claimant is so supine during a typical day." (Tr. 30); (3) Dr. Murty did not refer to reports of other individual providers and did not indicate on what basis his treatment of claimant would support his disability opinion; and (4) Dr. Murty did not discuss the various other studies performed on Claimant to investigate his subjective pain complaints. (Tr. 30).

It is well-established that any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

14

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ appears to have evaluated Dr. Murty's opinion based solely upon the single document dated October 4, 2005 which contained the restrictions upon his ability to work in determining Dr. Murty did not cite to the other examining medical sources and testing done on Claimant. This Court reads Dr. Murty's ultimate conclusions in conjunction with the other reports he made from January 19, 2004 forward, along with the results from the various

15

referrals Dr. Murty made for neurological evaluation. The ALJ myopically viewed Dr. Murty's treating opinions without regard to the totality of his treatment record. As a result, the ALJ's basis for rejection of Dr. Murty's opinions is flawed and the failure to provide any weight to the opinions of this treating source constituted error. On remand, the ALJ shall consider the entire treating record of Dr. Murty, including the referral opinions he considered in reaching his restrictions upon Claimant's ability to work.

### RFC Evaluation

Because the ALJ improperly weighted and failed to consider Dr. Murty's opinions, the RFC evaluation he ultimately reached must be re-evaluated on remand. This Court is also concerned the ALJ failed to properly consider the totality of the medical record and, instead, relied upon the opinions of the consultative examiner to the exclusion of all other medical opinions. On remand, the ALJ shall reconsider the record as a whole.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties

are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE